**KEPNER–TREGOE, INC.,**
Plaintiff–Appellee,

v.

**Victor H. VROOM, Defendant–Appellant.**

**Docket No. 98–7258.**

United States Court of Appeals, Second Circuit.

Argued April 28, 1999.

Decided Aug. 9, 1999.

Dean G. Bostock, Esq., Weingarten, Schurgin, Gagnebin & Hayes LLP, Boston, MA (Paul J. Hayes, on the brief), for Plaintiff–Appellee.

Gene S. Winter, Esq., St. Onge Steward Johnston & Reens, Stamford, CT (Gordon A. Evans, Gordon Alan Evans & Associates P.C., New Haven, CT; R. Bruce Rich, Elizabeth S. Weiswasser, Weil, Gotshal & Manges LLP, New York, NY, on the brief), for Defendant–Appellant.

Before: WALKER and POOLER, Circuit Judges, and MOTLEY, District

Judge.*

MOTLEY, District Judge:

This is an appeal of a civil judgment against Professor Victor H. Vroom (Dr. Vroom) for breach of contract and copyright infringement relating to an exclusive licensing agreement between Dr. Vroom and Kepner–Tregoe, Inc. (K–T). The licensing agreement provided K–T with the exclusive use of executive leadership training materials co-authored by Dr. Vroom in return for the payment of royalties to Dr. Vroom. The two issues presented by this appeal are (1) whether the district court's finding of liability against Dr. Vroom for intentional copyright infringement and breach of contract should be upheld, and (2) whether the district court properly assessed damages in the amount of $219,855.21 plus attorneys' fees. For the reasons discussed below, the decision of the district court is affirmed.

## BACKGROUND

In 1972, Dr. Vroom, a professor at Yale University's School of Organization and Management, entered into a licensing agreement with K–T, an international management training company. (Joint Appendix (JA) at 1575–79). This agreement granted K–T the exclusive worldwide rights to specific copyrighted materials co-authored by Dr. Vroom. These materials, known as the Vroom–Yetton model, were used to teach managers how to make better decisions. In return, K–T agreed to pay Dr. Vroom and his co-author, Dr. Philip W. Yetton, royalties based on its exclusive use of the licensed materials. (JA at 1575). The licensing agreement also included a teaching clause that allowed Dr. Vroom to retain non-assignable rights to use the licensed materials for his "own teaching and private consultation work." (JA at 1575, ¶ 2(c)).

In the mid–1980s, Dr. Vroom created a more sophisticated software program, enti-

tled "Managing Participation in Organizations" (MPO), which partially overlapped with the materials licensed to K–T. (JA at 1515). Dr. Vroom used the MPO program to conduct management training seminars for corporate executives at Yale University and other college campuses. (JA at 1516). Upon learning of Dr. Vroom's use of the copyrighted materials, K–T initiated this lawsuit in 1989. (JA at 1512).

K–T alleges that Dr. Vroom's use of the MPO program in his teaching of executives in the university setting infringes on its copyrights and constitutes a breach of the licensing agreement. It further alleges that Dr. Vroom breached the licensing agreement by assigning the rights to the MPO program, which infringed K–T's licensed materials, to Leadership Software Inc. (LSI), a Texas company founded by Dr. Vroom and his colleague, Dr. Arthur Jago. LSI was created to market the MPO program.

In 1990, K–T initiated a separate lawsuit against LSI and Dr. Jago in federal district court in Texas. *See Kepner–Tregoe, Inc. v. Leadership Software, Inc.,* 22 U.S.P.Q.2d 1788 (S.D.Tex.1992), *aff'd as modified by,* 12 F.3d 527 (5th Cir.), *cert. denied,* 513 U.S. 820, 115 S.Ct. 82, 130 L.Ed.2d 35 (1994). Dr. Vroom was not a defendant in the suit because personal jurisdiction was unavailable. (JA at 1515). In that case, K–T alleged copyright infringement based on LSI's sales of the MPO program, which contained substantial similarities to the Vroom–Yetton model, the copyrighted materials exclusively licensed to K–T. The Texas district court found in favor of K–T and awarded it $46,000 in actual damages as well as injunctive relief. The Fifth Circuit modified the injunction entered by the district court, but affirmed its finding of liability. *See Kepner–Tregoe, Inc.,* 12 F.3d at 540.

After a five-day bench trial in April 1997, the district court in the present ac-

* The Honorable Constance Baker Motley, of the United States District Court for the South- ern District of New York, sitting by designation.

tion held that Dr. Vroom's use of the licensed materials, including the infringing MPO program, in his teaching of executives in the university setting was not permitted under the teaching clause of the licensing agreement. (JA at 1527–28). The trial court found that the teaching clause was ambiguous as written and looked to other contemporaneous documentary evidence for clarification of the parties' intentions. (JA at 1534). The lower court interpreted the teaching clause to mean that Dr. Vroom was only allowed to use the copyrighted materials for his teaching of bona fide enrolled graduate and undergraduate students. (JA at 1541). Moreover, the district court found that Dr. Vroom willfully infringed the copyrighted material licensed to K–T and breached his contract with K–T when he taught the exclusively licensed materials to large groups of executives in the university setting. (JA at 1530, 1536). The court below also found that Dr. Vroom violated the licensing agreement when he assigned his rights to the licensed materials to LSI. (JA at 1532).

Awarding K–T the maximum statutory damages of $100,000, the district court found that Dr. Vroom's continued use of the MPO program in his executive training seminars, despite his knowledge of two federal court decisions in Texas that held the MPO program infringed K–T's copyrights, constituted willful infringement. (JA at 1538–39). The district court further held that K–T was entitled to attorneys' fees and costs under the Copyright Act, 17 U.S.C. § 505. (JA at 1539–40). The trial court issued an injunction prohibiting Dr. Vroom from using the MPO program or other materials exclusively licensed to K–T in any proscribed manner. The lower court also awarded K–T $119,855.21 in compensatory damages on its breach of contract claim. (JA at 1539).

The contractual damage award reflected the costs K–T incurred in litigating the Texas suit, which the district court found to be a direct consequence of Dr. Vroom's breach of the licensing agreement.

## DISCUSSION

There is no dispute between the parties that the MPO program contains elements of the materials exclusively licensed to K–T.[1] (Pl.'s Br. at 4; Def.'s Br. at 5). Rather, the only issues on appeal are (1) whether Dr. Vroom's use of the MPO program and other licensed materials in his executive training workshops on campus falls within the teaching clause of the licensing agreement, and (2) whether the district court properly assessed damages. Dr. Vroom contends that the district court erred in rejecting his acquiescence and public domain defenses to the copyright infringement claim. He further argues that the damage award constitutes a double recovery for a single injury. We will address the issue of copyright infringement before turning to Dr. Vroom's appeal of the damage award.

## I. COPYRIGHT INFRINGEMENT & BREACH OF CONTRACT CLAIMS

The central issue in this case involves the proper interpretation of the teaching clause of the licensing agreement, which allows Dr. Vroom to use the licensed materials in the course of his "own teaching and private consultation work." We find that the district court did not err in finding the teaching clause ambiguous. It properly looked to prior negotiations between the parties to determine the parties' intentions regarding the interpretation of the clause. Furthermore, credible evidence was presented at trial that supported the lower court's interpretation of the teaching clause so as to limit Dr. Vroom's teaching

---

1. The District Court below, the Texas District Court, and the Court of Appeals for the Fifth Circuit each found that the MPO program copied the "heart and soul" of the materials exclusively licensed to K–T. (JA at 1518–24,

1530). Indeed, the Fifth Circuit described the MPO program as "wholesale plagiarism." *Kepner–Tregoe, Inc.*, 12 F.3d at 534–35. Thus, there is no question that the infringing MPO program violated K–T's copyrights.

to only bona fide· enrolled undergraduate and graduate students.

## A. *Interpretation of Teaching Clause*

Dr. Vroom argues that the district court effectively rewrote the clear and unambiguous language of the licensing agreement by restricting his teaching of the licensed materials to only students. Dr. Vroom contends that the parties intended to allow him to retain broad and unlimited rights to use the licensed materials in his teaching, including his teaching of executives in the university setting. Dr. Vroom also claims that the trial court's decision will virtually deprive him of his right to earn a living because he is enjoined from using the MPO program in his courses for executives at Yale and other colleges.

■ We review the district court's construction of the text of the licensing contract *de novo. See United States v. 414 Kings Highway,* 128 F.3d 125, 127 (2d Cir.1997). To begin with, we agree with the district court that the teaching clause was ambiguous. K–T contends that this clause was only intended to allow the teaching of undergraduate and graduate students; Dr. Vroom argues that this clause, which also allowed "private consulting," also permitted him to teach classes to large groups of executives. We hold, as did the district court, that in the context of the agreement the word "teaching" was susceptible to the interpretation advanced by either Dr. Vroom or K–T. Accordingly, the district court was. entitled to consider extrinsic evidence to interpret the contractual language. *See Shann v. Dunk,* 84 F.3d 73, 80 (2d Cir.1996); *United States Fire Ins. Co. v. General Reinsurance Corp.,* 949 F.2d 569, 571 (2d Cir.1991).

■ We also affirm the district court's holding limiting the clause to the teaching of enrolled graduate and undergraduate students. The communications of the parties during the negotiation of the licensing agreement support this interpretation. K–T wrote a memorandum to Dr. Vroom in January of 1972, stating that it wanted to prevent "mass" teaching of the materials. Dr. Vroom produced no evidence at trial that he ever contradicted K–T's interpretation of ·the teaching clause in any communications with K–T throughout the remainder of the negotiations. The district court properly relied on this evidence to conclude that the teaching clause did not ex-·tend beyond the teaching of enrolled graduate and undergraduate students.

## B. *Acquiescence*

■ Contrary to Dr. Vroom's contention, the district court materially addressed the acquiescence argument in the context of its discussion of breach of contract and the proper interpretation of the teaching clause. We find that the district court properly rejected this defense, for which Dr. Vroom bore ·the burden of proof. *See Corning Glass Works v. Southern New England Tel. Co.,* 835 F.2d 451, 452 (2d Cir.1987) *(per curiam* ). Dr. Vroom presented no evidence that K–T· knew he was using licensed materials in his executive training seminars. K–T only knew Dr. Vroom was teaching executive seminars on campus. (Pl.'s Br. at 24). Since Dr. Vroom presented no evidence that suggested that K–T had knowledge that he was using the copyrighted materials and failed to object, we hold that the district court did not err in rejecting Dr. Vroom's acquiescence defense.

## C. *Public Domain*

■ Finally, Dr. Vroom alleges that the licensed materials entered the public domain in December of 1971, when he published the Vroom–Yetton model in an article in Novus, a publication of Carnegie–Mellon University. This article was distributed without any notice of copyright. We reject this contention.

These events are governed by the 1909 Copyright Act. Under the 1909 Act; an unpublished expression was protected only by a common law copyright. If the expression was then published in compliance

with the Act, including notice of copyright, it received statutory copyright protection; if it was published without notice, the common law copyright was forfeited, and the material entered the public domain. *See Sanga Music, Inc. v. EMI Blackwood Music, Inc.,* 55 F.3d 756, 758–59 (2d Cir.1995); *see also Shoptalk, Ltd. v. Concorde–New Horizons Corp.,* 168 F.3d 586, 590 (2d Cir.), *cert denied,* —— U.S. ——, 119 S.Ct. 2399, —— L.Ed.2d —— (1999) ("Under the 1909 Act, the publication of a work, with a proper notice, secured statutory copyright protection."). Once a statutory copyright was acquired by publication with notice, this common law forfeiture could not occur. *Cf. Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.,* 944 F.2d 1446, 1451 (9th Cir.1991) (ruling on whether expression "had entered the public domain through a general publication before it was protected by statutory copyright"); *Goodis v. United Artists Television, Inc.,* 425 F.2d 397, 402 (2d Cir.1970) ("first publication . . . under a general copyright notice . . . is sufficient to secure the author's copyright").

In this case, Dr. Vroom's first publication of the Vroom–Yetton model, as stated on his copyright application was on August 12, 1971. Registration was obtained in October of 1971. The Novus article did not appear until December of 1971, after statutory protection had been secured, and it did not result in forfeiture of the copyright. Moreover, the district court, relying on evidence of the extensive subsequent measures taken by Dr. Vroom to protect his copyright, properly found that Dr. Vroom did not intend to abandon the copyright by publication of the model in Novus.

## II. DAMAGES

### A. *Maximum Statutory Award Is Justified In Light of Dr. Vroom's Willful Infringement*

Dr. Vroom also appeals the district court's finding of willfulness. He alleges that he had a reasonable and good faith belief that his use of the licensed materials was protected under the licensing agreement. Dr. Vroom contends that he did not knowingly violate the Copyright Act since he had a good faith belief that his activities fell within the teaching clause, which the district court found to be ambiguous. K-T, on the other hand, argues that Dr. Vroom knowingly used the MPO program after two federal courts found it to be infringing, which justifies the enhanced statutory damages and attorneys' fees award. It further argues that the district court's willfulness finding was amply supported by the record.

██ This court reviews the district court's finding of willfulness and resulting enhanced statutory damages for clear error. *See Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1010 (2d Cir.1995). The standard for willfulness is "whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,* 996 F.2d 1366, 1382 (2d Cir. 1993).

██ The $100,000 statutory copyright infringement damages were justified in this case since the district court's finding that Dr. Vroom willfully violated the agreement was supported by the evidence presented at trial. (JA at 1518–24, 1527, 1530, 1532–33). Dr. Vroom continued to use the MPO program even after a Texas district court and the Fifth Circuit found that the MPO program infringed K–T's copyrights and entered an injunction against LSI's use of the MPO program. (JA at 1538–39). Dr. Vroom was clearly aware of these decisions, evidenced by his 50% ownership in LSI, the defendant in the Texas suit, and his financing of LSI's unsuccessful appeal to the Fifth Circuit. (JA at 97, 1530). However, Dr. Vroom chose to ignore the injunction and continued to use the MPO program in his executive training workshops. (JA at 1517, 1538–39). Dr. Vroom also knowingly as-

signed his rights to the licensed materials to a third party in direct violation of the licensing agreement. (JA at 1527, 1532–33). Each of these acts justifies a finding of willful infringement.

■ The court's award of attorney fees under the Copyright Act, 17 U.S.C. § 505, is also justified based on the court's finding of willfulness and is in line with the statutory goal of deterrence. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Thus, as the district court noted, Dr. Vroom's egregious conduct in continuing to use the MPO program following the Texas court's injunction was the "antithesis of innocence" and fully justified the district court's award of maximum statutory damages as well as its award of attorneys' fees. (A1538–40).

## B. *Breach of Contract Damages*

■ Dr. Vroom further contends that the district court erred in awarding a double recovery to K–T. Dr. Vroom argues that K–T is being compensated twice for the same alleged injury under two legal theories, copyright infringement and breach of contract. K–T objects to this ground for appeal, claiming that Dr. Vroom did not raise this issue in the district court.

■ The district court's damage award does not represent a double recovery. The fact that Dr. Vroom did not raise this issue in his Post–Trial Memorandum does not preclude this court from addressing the issue. Dr. Vroom cannot be said to have reasonably anticipated that the lower court would make an allegedly double damage award. However, this court finds that the district court did not award K–T double damages as Dr. Vroom contends. The approximately $120,000 in contract damages represents the cost of litigating the Texas suit, which was found to be a direct consequence of Dr. Vroom's breach of the licensing agreement. Such damages are permissible under *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 309 (2d Cir.1987), which allowed for the recovery of counsel fees and other litigation expenses incurred in a prior suit to enforce contract rights against a third party.

Thus, there are two distinct categories of damages based on two separate acts. The $100,000 statutory damage award stems from Dr. Vroom's willful acts of copyright infringement after the Texas court enjoined the sale or use of the infringing MPO program. The approximately $120,000 contractual damage award represents K–T's consequential damages of having to litigate a suit in Texas to enforce its copyright rights stemming from Dr. Vroom's breach of the licensing agreement when he assigned the rights to the MPO to a third party. Thus, the two elements of the district court's damage award are permissible and do not constitute a double recovery.

## CONCLUSION

Having considered all of defendant's grounds for appeal, we find no basis for reversing the district court's findings. Therefore, the decision of the district court is affirmed.