RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ZOMBA ENTERPRISES, INC.; ZOMBA SONGS, INC.,
                    *Plaintiffs-Appellees,*

  *v.*                                                        Nos. 06-5013/5266

PANORAMA RECORDS, INC.,
                    *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 03-00042—Todd J. Campbell, Chief District Judge.

Argued: March 5, 2007

Decided and Filed: June 26, 2007

Before: BATCHELDER and MOORE, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Lawrence E. Feldman, LAWRENCE E. FELDMAN & ASSOCIATES, Elkins Park, Pennsylvania, for Appellant. Timothy L. Warnock, BOWEN, RILEY, WARNOCK & JACOBSON, Nashville, Tennessee, for Appellees. **ON BRIEF:** Lawrence E. Feldman, LAWRENCE E. FELDMAN & ASSOCIATES, Elkins Park, Pennsylvania, for Appellant. Timothy L. Warnock, William L. Campbell, Jr., BOWEN, RILEY, WARNOCK & JACOBSON, Nashville, Tennessee, for Appellees.

---

## OPINION

---

   KAREN NELSON MOORE, Circuit Judge. From Japan to the United States and beyond, karaoke is wildly popular. Countless people have lined up at various venues to perform their favorite songs with, and in front of, their friends. But few participants (with the possible exception of IP lawyers) ever stop to consider the intellectual property regime governing karaoke.

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

Panorama Records, Inc. ("Panorama"), a purveyor of karaoke discs, resembles the majority of these participants. It entered the business of recording and selling karaoke discs without considering whether doing so infringed the intellectual property rights of others. Before long, this lack of foresight caught up with Panorama.

This case requires us to review a district court's entry of summary judgment in favor of, and monetary award to, a plaintiff copyright holder whose musical compositions Panorama copied on its karaoke discs. Ultimately, we conclude that the district court (1) correctly concluded that Panorama willfully infringed the plaintiffs' copyrights, and did not abuse its discretion by (2) awarding the plaintiffs $806,000 in statutory damages, (3) denying Panorama's motion to transfer venue, and (4) awarding the plaintiffs attorney fees. Accordingly, we **AFFIRM** the district court's judgment in all respects.

## I. FACTS AND PROCEDURE

### A. Statutory Background

Our Constitution grants Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors . . . the exclusive Right to their respective Writings." U.S. CONST. art. I, § 8, cl. 8. Toward that end, the Copyright Act offers protection to various kinds of works of authorship, including "musical works, including any accompanying words." 17 U.S.C. § 102(a)(2).[1] This protection provides copyright owners with the exclusive rights to reproduce the works and to distribute these copies to the public. *Id.* § 106(1), (3). Anyone who violates these, or other, rights of the copyright owner is an "infringer," and thus is liable to the owner, *id.* § 501(a), (b), and subject to injunctions, *id.* § 502, damages, *id.* § 504, and attorney fees, *id.* § 505.

Plaintiff copyright owners whose copyrights actually have been infringed may elect between receiving as damages (1) their actual damages plus the infringer's profits attributable to its infringement, or (2) statutory damages. *Id.* § 504(b), (c). In the standard copyright-infringement case, the district court has discretion to award statutory damages of any amount between $750 and $30,000 for each copyright infringed. *Id.* § 504(c)(1). However, if the plaintiff proves that the infringement is willful, the statutory-damage ceiling rises to $150,000. *Id.* § 504(c)(2). Conversely, if the defendant establishes that infringement is innocent, the statutory-damage floor falls to $200. *Id.*

### B. Factual Background

Since 1998, Panorama has been in the business of manufacturing and selling karaoke compact discs. It issues a new disc monthly in each of a variety of musical genres, including country, pop, rock, and R&B. Each installment (or "karaoke package") contains the top hits in that genre for the relevant month. Laurindo Santos is one of Panorama's four shareholders, and at all times relevant to this case he was the decision-maker regarding the release of products.

The individual discs that Panorama makes and sells are in the CD+G format—shorthand for "compact disc plus graphics." As Panorama explains, "[t]hese are compact discs on which musicians that are hired by Panorama record a musical composition of a work which at some time may have been made popular by another artist. The CD+G contains a graphic element and is designed to be viewed when played on a karaoke machine." Joint Appendix ("J.A.") at 472 (Resp. to Req. for Admis. #1). The graphic element consists of the text of each song's lyrics, and it scrolls

---

[1] A song's lyrics are also entitled to independent protection as "literary works." *See* 17 U.S.C. § 102(a)(1) (providing for copyright of literary works); *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996) (noting that "lyrics enjoy independent copyright protection as 'literary works'").

across a screen as the music (sans vocals) plays, permitting karaoke participants to read the lyrics as they sing along. Each of Panorama's karaoke packages contained nine or ten songs, with two tracks for each song, one track released with audible lyrics and one without.

Zomba Enterprises, Inc. and Zomba Songs, Inc. (collectively, "Zomba") are music publishing corporations often identified by the trade name Zomba Music Publishing. Zomba "is in the business of exploiting musical compositions for commercial gain." J.A. at 257 (Kalinska Aff. ¶ 2). Toward this purpose, and at all times relevant to this case, Zomba held and administered the copyrights to a variety of musical compositions, including songs performed by pop music performers such as 98 Degrees, Backstreet Boys, *NSYNC, and Britney Spears.[2]

Without Anna Music ("Without Anna") is another music publishing company, but is not a party to this action. In 2000, Without Anna discovered that some of the songs to which it owned copyrights appeared on Panorama's karaoke packages. In response, attorney Linda Edell Howard sent a cease-and-desist letter to Panorama on Without Anna's behalf, demanding that Panorama quit selling unlicensed copies of Without Anna's songs. When Panorama received this letter from Howard in 2000, it had not acquired licenses from the copyright owners of any of the songs it had released in its karaoke packages. Panorama then hired Vincent Castalucci, a licensing agent, and began negotiating licenses. Eventually, Panorama obtained license agreements from Without Anna.

On February 28, 2002, Howard sent another cease-and-desist letter to Panorama, this time on behalf of Zomba. Like Without Anna, Zomba had discovered that Panorama's karaoke packages contained copies of songs it owned. Zomba's cease-and-desist letter specified the terms upon which Zomba would be willing to grant a license: a $250 fixing fee for each Zomba-owned song on each package,[3] plus royalties of $0.16 per song per CD+G sold for the first half of the five-year license term, and $0.19 per song per CD+G sold for the second-half of the term. Santos and Castalucci contacted Howard in response to this letter, but Panorama did not stop selling CD+Gs with Zomba's songs on them, nor did it obtain any licenses.

On April 12, 2002, Howard sent a follow-up cease-and-desist letter on Zomba's behalf. Again, Santos and Castalucci responded to the letter. And again, Panorama failed both to obtain licenses to Zomba's songs and to cease selling CD+Gs containing them.

## C. Procedural History

On January 13, 2003, Zomba filed its complaint, asserting thirty counts of copyright infringement—one count for each Zomba-owned musical composition that Panorama recorded and sold in its karaoke packages. Panorama answered, asserting no affirmative defenses other than estoppel, laches, waiver, and acquiescence. On April 22, 2003, the parties entered into a consent order in which Panorama agreed "to be restrained from distributing, releasing or otherwise exploiting any karaoke package containing compositions owned or administered by" Zomba. J.A. at 202 (4/22/03 Dist. Ct. Order). Within a week of entering this consent order, Panorama breached its agreement and resumed selling CD+Gs containing Zomba's copyrighted work. This conduct continued, and a year later, Zomba moved for sanctions on this basis.

---

[2]The record does not indicate whether Zomba also holds copyrights to the sound recordings of these songs, but this is irrelevant to the litigation.

[3]Howard testified that a "fixing fee" "is basically a permission to fix the copyrighted musical work with the technology to allow you to visually see the lyric[s]. And it is a one-time fee . . . ." J.A. at 650 (11/5/05 Hr'g Tr. at 18). Such permission generally comes in the form of a "synch license." *ABKCO Music*, 96 F.3d at 62-63 & n.4.

After the parties filed cross-motions for summary judgment but before the district court ruled, Panorama's counsel withdrew on May 10, 2004.  On June 18, 2004, the district court granted Zomba's, and denied Panorama's, motion for summary judgment on the issue of copyright infringement, rejecting Panorama's fair-use defense.

To determine damages, the district court scheduled a bench trial for August 10, 2004. Panorama was unable to obtain new counsel and consequently failed to file any of the required pretrial documents or to appear at the pretrial conference held on July 29, 2004.  The district court accordingly entered a default against Panorama on the issue of damages.  Panorama responded by filing for bankruptcy in the Bankruptcy Court for the District of Massachusetts on August 9, 2004. In response, the district court stayed the case.

After the bankruptcy court lifted its stay, Panorama moved the district court to transfer the case to either the bankruptcy court, the U.S. District Court for the District of Massachusetts, or the U.S. District Court for the Southern District of New York.  The district court denied this motion on August 9, 2005.  On November 5, 2005, the district court held a hearing to determine the amount of damages.  A month later, the district court issued findings of fact and conclusions of law.  The district court concluded that Panorama's infringement was willful, and accordingly awarded Zomba $31,000 for each of the twenty-six infringements at issue,[4] for a total of $806,000.  On January 23, 2006, the district court also awarded Zomba $76,456.16 in attorney fees and $1058.91 in costs. Panorama timely filed notices of appeal on December 29, 2005, and February 15, 2006.[5]

## II.  JURISDICTION

The district court had federal-question jurisdiction over this copyright case, 28 U.S.C. § 1331, and 28 U.S.C. § 1291 gives us jurisdiction over the district court's final judgment.

## III.  ANALYSIS

On appeal, Panorama raises a series of challenges.  First, it objects to the district court's rejection of its fair-use defense and the district court's correlative conclusion that Panorama infringed Zomba's copyrights.  Next, it disputes the district court's statutory-damage calculation, arguing both that any infringement was not willful and that the $806,000 damage award is unconstitutionally high.  Third, it argues that the district court erred by refusing to grant its motion to transfer venue.  Finally, Panorama appeals the district court's award of attorney fees to Zomba.

### A.  Copyright Infringement

#### 1.  Standard of Review

The district court granted Zomba's motion for summary judgment on the issue of copyright infringement.  We review de novo a district court's order granting summary judgment, *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004), and will affirm a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[4]Zomba previously had voluntarily dismissed four of the thirty counts in its complaint.  For clarity, the remaining twenty-six musical compositions are referred to as the "relevant compositions."

[5]The former notice of appeal seeks review of (1) the district court's granting original counsel permission to withdraw; (2) the grant of summary judgment in favor of Zomba; (3) the default judgment on damages; (4) the denial of the motion to change venue; and (5) the December 5, 2005 order awarding statutory damages.  The latter notice of appeal seeks review of the district court's award of attorney fees and costs.

party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c).  In reviewing the district court's decision to grant summary judgment, we view all evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2. Elements

The elements of a copyright-infringement claim are (1) ownership of the copyright by the plaintiff and (2) copying by the defendant.  *ATC Dist. Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 705 (6th Cir. 2005); *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999).  Panorama disputes neither element.  Instead, it claims that the fair-use doctrine affirmative defense precludes liability.[6]

### 3. Fair Use

Panorama's core argument is that its copying should be considered "fair use" under the Copyright Act.  Although Panorama did not raise fair use as an affirmative defense in its answer, it offered this argument to the district court in support of its, and in opposition to Zomba's, motion for summary judgment.  Because Panorama presented the issue of fair use to the district court and because the district court addressed it, we assume without deciding that it was not waived.

The purpose of the fair-use doctrine is to ensure that courts "avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster."  *Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1385 (6th Cir. 1996) (en banc), *cert. denied*, 520 U.S. 1156 (1997).  Accordingly, § 107 of the Copyright Act provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.  It further instructs district courts to consider the following factors in analyzing a claim of fair use:

1. the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2. the nature of the copyrighted work;

3. the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4. the effect of the use upon the potential market for or value of the copyrighted work.

*Id*.  Because, as explained below, none of these factors supports Panorama's position, we reject Panorama's fair-use defense.

---

[6]In addition to fair use, Panorama asserts on appeal a number of other affirmative defenses.  Specifically, Panorama argues that Zomba's copyrights violate "the idea/expression dichotomy," are subject to compulsory licensing, and constitute copyright misuse.  It also maintains that its use of Zomba's musical compositions was *de minimis*, and accordingly not actionable.  We do not consider these arguments because Panorama failed to present any of these defenses to the district court and accordingly forfeited them.  *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal.").

### a. Purpose and Character of Use

In evaluating the purpose and character of the use of the work at issue, we consider whether the new work is "transformative," and whether the use of that work is for commercial or noncommercial purposes.

> The central purpose of this investigation [into purpose and character of use] is to see . . . whether the new work merely "supersede[s] the objects" of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative."

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.*

As an initial matter, Panorama's use of the compositions is only minimally, if at all, transformative. Although Panorama created its own recordings of these songs, Santos admitted that the hired musicians did not "change the words or music." J.A. at 684 (11/5/05 Hr'g Tr. at 52). Unlike a parody, *see Campbell*, 510 U.S. at 579-80, a facsimile recording of a copyrighted composition adds nothing new to the original and accordingly has virtually no transformative value. *Cf. Princeton Univ. Press*, 99 F.3d at 1389 ("If you make verbatim copies of 95 pages of a 316-page book, you have not transformed the 95 pages very much . . . .  This kind of mechanical 'transformation' bears little resemblance to the creative metamorphosis accomplished by the parodists in the *Campbell* case.").

The crux of Panorama's fair-use argument is its assertion that its use was transformative because its karaoke packages are used for "teaching." Notably, this focus is newly found. In the district court, Panorama's primary argument was that their karaoke packages "encourage creativity, and often commentary" among their end-users, and accordingly qualify as "transformative works." J.A. at 218-19 (Mem. in Supp. of Def.'s Mot. for Summ. J. at 13-14). Although Panorama offered a passing reference to karaoke's value as "an interactive and educational experience," J.A. at 218 (Mem. in Supp. of Def.'s Mot. for Summ. J. at 13), it never argued that the primary purpose of karaoke is "teaching," and for good reason, as this argument is wholly meritless. Panorama's own description of karaoke further undermines its assertion regarding "teaching": "Karaoke is primarily thought of as a form of *entertainment* that allows anyone to grab a microphone, hop on stage, and live out their [sic] fantasies of performing as famous music stars." J.A. at 208 (Mem. in Supp. of Def.'s Mot. for Summ. J. at 3) (emphasis added). Moreover, the record is bereft of evidence indicating that Panorama's products are used for teaching *at all* (e.g., invoices showing sales to schools, advertisements aimed at educators, affidavits from teachers, etc.).

More importantly though, the end-user's utilization of the product is largely irrelevant; instead, the focus is on whether alleged infringer's use is transformative and/or commercial. In *Princeton University Press*, we considered a copyright suit against a college-town copy shop that copied portions of books and then sold these copies to students in "coursepacks." 99 F.3d at 1383. We rejected the copy shop's fair-use defense, concluding that the defendant's copying was a commercial use, even though the students ultimately used the copies for educational purposes. *Id.* at 1389. To reach this conclusion, we emphasized that "the use of the materials by the students is not the use that the publishers are challenging." *Id.* at 1386. Instead, the publishers were challenging "the duplication of copyrighted materials for sale by a for-profit corporation that has decided to maximize its profits . . . by declining to pay the royalties requested by the holders of the copyrights." *Id.*

Quite similarly, Zomba does not challenge karaoke crooners' renditions (atrocious or otherwise) of the relevant compositions, but rather Panorama's decision to copy these songs onto CD+Gs and then distribute them without paying royalties. Like the copying at issue in *Princeton University Press*, Panorama's manufacturing and selling the karaoke packages at issue "was performed on a profit-making basis by a commercial enterprise." *Id.* at 1389. Accordingly, Panorama's use is commercial in nature, a fact militating against its fair-use defense.

### b. The Nature of the Copyrighted Work

The second of the § 107 factors "calls for recognition that some works are closer to the core of intended copyright protection than others," *Campbell*, 510 U.S. at 586, and accordingly are entitled to stronger protection. Like the musical composition in *Campbell* (Roy Orbison's "Oh, Pretty Woman"), the compositions of pop songs here at issue "fall[] within the core of the copyright's protective purposes." *Id.* Accordingly, this factor militates against a finding of fair use.

### c. The Amount and Substantiality of the Portion Used

As the *Princeton University Press* court recognized, "the larger the volume . . . of what is taken, the greater the affront to the interests of the copyright owner, and the less likely that a taking will qualify as a fair use." *Princeton Univ. Press*, 99 F.3d at 1389 (quoting Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1122 (1990)). Here, Panorama acknowledges that it copied the entire compositions. It hired studio musicians to play the songs as closely as possible to the original performers, and distributed copies of their efforts. Additionally, it copied the lyrics, in both an auditory (on the tracks containing vocals) and a visual (on the graphics display) fashion. Because Panorama copied the relevant compositions in their entirety, this factor, too, cuts against Panorama's fair-use defense.

### d. Effect on the Potential Market for the Copyrighted Work

Finally, we consider the effect on the potential market for licensing of the relevant musical compositions. Regarding the allocation of proof for this factor, we have held that when the copying at issue is commercial in nature, the alleged infringer bears the burden of proving the "market effect" factor. *Princeton Univ. Press*, 99 F.3d at 1385-86. Here, Panorama has failed to sustain its burden of proving that its copying does not adversely affect the market value of Zomba's copyrights.

The thrust of Panorama's argument—that Zomba and Panorama operate in different markets—is factually inaccurate, as the record illustrates that Zomba has previously licensed (and continues to license) its musical compositions to purveyors of karaoke products. It follows, then, that market harm is a given, as Panorama's unlicensed copying deprived Zomba of licensing revenues it otherwise would have received.[7] Further, there can be no doubt that Panorama's practices, if they became widespread throughout the karaoke industry, would have a deleterious effect on the potential market for licenses to Zomba's songs. Accordingly, Panorama cannot show that its copying passes the market-harm test,[8] and this factor, like the other three, militates in favor of rejecting its fair-use defense.

---

[7]Panorama attacks this analysis as circular, Reply Br. at 7, but fails to acknowledge that we have previously rejected the identical circularity argument in an en banc case. *See Princeton Univ. Press*, 99 F.3d at 1387-88.

[8]Panorama further argues that its use of Zomba's musical compositions is likely to enhance, rather than harm, the market demand for Zomba's products. While this argument might make sense if the copyrights at issue were copyrights of *sound recordings*, that is not the case, and Panorama offers no evidence that unlicensed copying of Zomba's musical compositions spurs demand for additional licensing, or even any logical reason why it could.

Because all four fair-use factors indicate that Panorama's copying was not a fair use, we conclude that the district court correctly rejected this defense and concluded that Panorama infringed Zomba's copyrights.

## B. Willfulness

Next, Panorama argues that even if it infringed Zomba's copyrights, the district court erred by concluding that the infringement was willful and thus was subject to enhanced statutory damages. According to Panorama, any infringement was innocent, and certainly not willful. We disagree.

For infringement to be "willful," it must be done "with knowledge that [one's] conduct constitutes copyright infringement." *Princeton Univ. Press*, 99 F.3d at 1392 (quoting MELVILLE B. NIMMER & DAVID NIMMER, 3 NIMMER ON COPYRIGHT § 14.04[B][3] (1996)). Accordingly, "one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." *Id.* This belief must be both (1) reasonable *and* (2) held in good faith. *See id.*

Panorama argues that it held a good-faith belief that the copying here at issue was a fair use, and contends that even if ultimately erroneous, this belief precludes a finding of willfulness. As in *Princeton University Press*, the issue is not so much whether Panorama held in good faith its belief that its copying was fair use (although we have serious misgivings on this matter),[9] but whether Panorama *reasonably* believed that its conduct did not amount to copyright infringement. *Princeton Univ. Press*, 99 F.3d at 1392. To decide this issue, we must determine "whether the copyright law supported the plaintiffs' position so clearly that the defendants must be deemed as a matter of law to have exhibited a reckless disregard of the plaintiffs' property rights." *Id.* We review de novo this narrow issue, *id.*, but we note that other circuits have reviewed for clear error district courts' conclusions on the broader issue of willfulness, *see, e.g., Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991) (citing *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380 (7th Cir. 1988)). Because our analysis focuses solely on the narrower issue, we need not determine whether *Princeton University Press*'s de novo standard applies to the broader issue of willfulness in general. Accordingly, we express no opinion on that issue, leaving it for a future case.

Here, we conclude that Panorama exhibited a reckless disregard for Zomba's rights, and accordingly, that Panorama's reliance on its fair-use defense was objectively unreasonable. The fact most crucial to this inquiry is that Panorama continued to sell karaoke packages containing copies of each of the relevant compositions *after* the district court entered its April 22, 2003, consent order forbidding Panorama to do so.

In copyright cases, it is unreasonable to rely on a defense to infringement after a court rejects it on the merits. *Kepner-Tregoe,* 186 F.3d at 288-89 (2d Cir. 1999) (holding that copyright defendant's reliance on a defense was unreasonable when the Fifth Circuit had previously concluded that the plaintiff's copyright was valid and enforceable). This principle does not dispose fully of Panorama's position because the April 22, 2003, consent order did not resolve any issues on the merits. To the contrary, the order stated that it "shall not be construed as a finding of any fact by

---

[9]The reasons for these misgivings are numerous. For instance, we note that Panorama did not mention fair use in its initial licensing discussions with Howard. Instead, Panorama waited to raise its fair-use defense until this litigation was over a year old. This delay calls into serious question whether Panorama sincerely believed that its copying was a fair use before it began recording and distributing the karaoke packages. Instead, it appears that the fair-use defense was merely a post-hoc rationalization concocted to skirt liability. Further, we note that the record is bereft of evidence that Panorama ever discussed the fair-use doctrine with an attorney. This fact distinguishes Panorama's situation from that of the defendant in *Princeton University Press*, who had consulted with an attorney regarding fair use. *See Princeton Univ. Press*, 99 F.3d at 1384.

the [District] Court or a finding by the [District] Court that Plaintiff has established . . . any . . . substantive element of its case." J.A. at 202 (4/22/03 Dist. Ct. Order).

This caveat, however, does not justify Panorama's continued reliance on its fair-use defense. By entering into the consent decree, Panorama agreed to cease infringing Zomba's copyrights. Thus, it implicitly agreed to suspend its reliance on the fair-use defense at least temporarily, and this agreement was reduced to an order of the court. Because an order entered by a court of competent jurisdiction must be obeyed even if it is erroneously issued, *see Walker v. City of Birmingham*, 388 U.S. 307, 321 (1967), Panorama lacked any legal justification for continuing to distribute copies of Zomba's copyrighted works after April 22, 2003. Without expressing any opinion regarding the reasonableness of Panorama's position before that date, we are certain that from April 22, 2003, on, the law applicable to this case "supported [Zomba's] position so clearly that [Panorama] must be deemed as a matter of law to have exhibited a reckless disregard of [Zomba's] property rights." *Princeton Univ. Press*, 99 F.3d at 1392. On this basis, we agree with the district court's conclusion that Panorama's infringements were willful and accordingly justified enhanced statutory damages.

## C.  Amount of Statutory-Damage Award

Panorama next challenges the district court's $806,000 statutory-damage award. First, it argues that the district court abused its discretion in calculating the award. Next, it argues that the awards are disproportionate and unreasonable under the Eighth Amendment and the Fifth Amendment's Due Process Clause.

### 1.  Abuse of Discretion

Panorama contends that the district court believed that, after making a finding of willfulness, it lacked discretion to award statutory damages of less than $30,000 per infringement. On this basis, Panorama maintains that the district court abused its discretion. The record does not support this argument.

In its conclusions of law, the district court recognized that it had "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the maximum and minimum amounts." J.A. at 164 (12/5/05 Dist. Ct. Op. at 7). It found "that the maximum statutory amount of $30,000 per work for 'innocent' infringement is not sufficient in this case because of the clearly willful nature of Defendant's conduct," but that the maximum award of $150,000 per infringement was excessive, given the dollar amounts involved in the case. J.A. at 164-65 (*id.* at 7-8).

Nowhere did the district court indicate that it believed that it lacked discretion to award statutory damages of less than $30,000 per infringement. To the contrary, Panorama's willfulness prompted the district court to conclude that the maximum penalty for nonwillful infringement was *not sufficient* given Panorama's conduct. We therefore conclude that Panorama has not shown that the district court abused its discretion by setting the statutory damage award at $31,000 per infringement.

## 2. Eighth Amendment

Panorama next argues that such a high award of statutory damages, in light of the relatively low actual damages,[10] renders the district court's award an "excessive fine" under the Eighth Amendment. However, the Supreme Court has explained that the word "fine" in this context means a payment to the *government*. *United States v. Bajakajian*, 524 U.S. 321, 327 (1998). Consequently, the Court has held that the Excessive Fines Clause "does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded." *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 264 (1989). Panorama's Eighth Amendment argument thus fails.

## 3. Due Process

Panorama argues, based upon *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), that an award of statutory damages that (it alleges) is thirty-seven times the actual damages violates its right to due process. Again, we disagree.

We note at the outset that both *Gore* and *Campbell* addressed due-process challenges to *punitive*-damages awards. In both cases, the award was greater than one hundred times the amount of compensatory damages awarded. In *Gore*, the Court concluded that the award in question (which amounted to 500 times the compensatory-damages award) was "grossly excessive," 517 U.S. at 574, after considering three "guideposts": (1) "the degree of reprehensibility of the" defendant's conduct; (2) "the disparity between the harm or potential harm suffered by [the plaintiff] and [the] punitive damages award"; and (3) "the difference between this remedy and the civil penalties authorized or imposed in comparable cases," *id.* at 575. In *Campbell*, the Court considered the same three guidepost factors and concluded that the punitive-damages award (which amounted to 145 times the compensatory-damages award) "was an irrational and arbitrary deprivation of the property of the defendant." 538 U.S. at 429. Regarding the second guidepost, neither case created a "concrete constitutional limit[]" to the punitive-to-compensatory damages ratio. *Id.* at 424. Instead, the *Campbell* Court explicitly "decline[d] . . . to impose a bright-line ratio which a punitive damages award cannot exceed," although it expressed a general preference for single-digit ratios. *Id.* at 425.

The Supreme Court has not indicated whether *Gore* and *Campbell* apply to awards of *statutory* damages. We know of no case invalidating such an award of statutory damages under *Gore* or *Campbell*, although we note that some courts have suggested in dicta that these precedents may apply to statutory-damage awards. *See, e.g.*, *Parker v. Time Warner Entm't Co.,* 331 F.3d 13, 22 (2d Cir. 2003) (suggesting that "in a sufficiently serious case," due process may require courts to reduce a statutory-damage award in a class action, and citing both *Campbell* and *Gore*); *Leiber v. Bertelsmann AG* (*In re Napster, Inc. Copyright Litig.*), Nos. C MDL-00-1369 MHP & C 04-1671 MHP, 2005 WL 1287611, at *10 (N.D. Cal. June 1, 2005) (unpublished) (citing *Gore* and *Campbell*); *DIRECTV v. Gonzalez*, No. Civ.A.SA-03-1170 SR, 2004 WL 1875046, at * 4 (W.D. Tex. Aug. 23, 2004) (unpublished) (citing *Campbell*); *but see Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 459-60 (D. Md. 2004) (concluding that *Gore* and *Campbell* do not limit statutory damages in copyright cases).

---

[10]The district court concluded that it was unable to calculate the actual damages based on the record before it. Panorama asserted that it sold a total of 74,734 copies of the twenty-six infringed compositions. Based upon this figure, Zomba lost approximately $11,957.92 in royalties, plus an additional $6500 in fixing fees, for a total of $18,457.92.

Additionally, Panorama asserted that its net profit attributable to the twenty-six compositions at issue was $9693.86, although Panorama never substantiated its expenses to the district court. Assuming arguendo that this profit figure is accurate, Zomba would have been entitled to $28,151.78 if it had not elected to pursue statutory damages. *See* 17 U.S.C. § 504(b).

Regardless of the uncertainty regarding the application of *Gore* and *Campbell* to statutory-damage awards, we may review such awards under *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919), to ensure they comport with due process. In such cases, we inquire whether the awards are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 67. This review, however, is extraordinarily deferential—even more so than in cases applying abuse-of-discretion review. *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935) (Congress's purpose in enacting the statutory-damage provision of the 1909 Copyright Act and its delineation of specified limits for statutory damages "take[] the matter out of the ordinary rule with respect to abuse of discretion"); *Broad. Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 487 (7th Cir. 1995) (interpreting the modern Copyright Act and noting "that the standard for reviewing an award of statutory damages within the allowed range is even more deferential than abuse of discretion").

*Williams* is instructive, and leads us to conclude that the statutory-damage award against Panorama was not sufficiently oppressive to constitute a deprivation of due process. In that case, a railroad charged two sisters sixty-six cents apiece more than the maximum rate permissible by regulation. 251 U.S. at 64. A state statute sought to deter such overcharges by providing for statutory damages of between $50 and $350 when a railroad charged more than the permissible rate. *Id.* The sisters sued separately, and received statutory damage awards of $75 apiece—over 113 times the amount they were overcharged. *Id.* Before the Supreme Court, the railroad argued that the penalty was so disproportionate to the harm sustained that it violated due process. Rejecting this argument, the Court concluded that the award "properly cannot be said to be so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." *Id.* at 67.

If the Supreme Court countenanced a 113:1 ratio in *Williams*, we cannot conclude that a 44:1 ratio[11] is unacceptable here. We acknowledge the Supreme Court's preference for a lower punitive-to-compensatory ratio, as stated in *Campbell*, but emphasize that this case does not involve a punitive-damages award. Until the Supreme Court applies *Campbell* to an award of statutory damages, we conclude that *Williams* controls, not *Campbell*, and accordingly reject Panorama's due-process argument.[12]

## D.  Motion to Transfer

We review denials of motions to transfer to determine whether the district court abused its discretion. *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 533 (6th Cir. 2002). Panorama argues that the district court erred by refusing to transfer the case pursuant to 28 U.S.C. § 1404(a). Panorama's original motion to transfer asked the district court to transfer the case to the U.S. District Court for the Southern District of New York, the U.S. District Court for the District of Massachusetts, or the U.S. Bankruptcy Court for the District of Massachusetts. However, on appeal Panorama argues only that the district court should have transferred the case to the bankruptcy court.

---

[11]Dividing the statutory-damage award ($806,000) by the lost licensing fees, as calculated by Panorama, ($18,458) yields a ratio of about 44:1. The 37:1 figure that Panorama advances in its brief includes in the denominator Panorama's unsubstantiated net profits figure of $9693.86. This sum is separate from the "actual damages," as defined by 17 U.S.C. § 504(b), which permits a copyright plaintiff to elect to receive "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and not taken into account in computing the actual damages."

[12]The Supreme Court's recent decision in *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007), which was issued after the parties submitted their briefs but before oral argument, does not alter our analysis. There, the Supreme Court considered only "whether the Constitution's Due Process Clause permits a jury to base [a punitive-damage] award in part upon its desire to *punish* the defendant for harming persons who are not before the court." *Id.* at 1060. As there is absolutely no indication that the district court based its award of statutory damages on Panorama's conduct vis-à-vis copyright holders other than Zomba, *Philip Morris USA* is inapposite.

Panorama offers two bases for its argument:  (1) the parties, witnesses, and events of the case lacked ties to Tennessee; and (2) the case was related to a bankruptcy proceeding in Massachusetts.

The first of Panorama's arguments is factually inaccurate, as the infringing materials were recorded in Nashville, and Howard, who served as a witness, communicated with Panorama from her Nashville office.  Further, Nashville was the site of the infringements in question, as Panorama hired Nashville musicians to record copies of the relevant compositions in Nashville.  The second argument similarly fails, as 28 U.S.C. § 1334(b) states that district courts "have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11."  This provision does not deprive a district court of jurisdiction over cases "related to" a pending bankruptcy, nor does it even indicate that the proper course of action is to transfer such cases to the bankruptcy court. Notably, Panorama cites no cases holding that a district court abuses its discretion by refusing to transfer a related case to a bankruptcy court.  And just as notably, at the November 5, 2005, damages hearing, Panorama's counsel conceded that the district court had the authority to proceed.

Furthermore, Panorama did not move to transfer venue until July 25, 2005, which is more than a year after it filed for bankruptcy and more than two-and-a-half years after Zomba first filed its complaint.  Panorama does not suggest any reason why the district court's refusal to grant such a tardy motion constitutes an abuse of discretion.  Accordingly, we reject this challenge to the district court's judgment.

## E.  Attorney fees

Lastly, Panorama argues that the district court abused its discretion by awarding attorney fees to Zomba.  The Copyright Act provides that "the [district] court in its discretion may allow the recovery of full costs . . . [and ] may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court endorsed in dicta a series of factors "to guide courts' discretion" in awarding attorney fees.  *Id.* at 534 n.19.  The factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* (internal quotation and citation omitted).

According to Panorama, the district court abused its discretion by failing to consider the *Fogerty* factors.  However, as Zomba notes, the parties provided the district court with briefing focused on the factors, so even if the district court did not precisely recount its assessment of the factors, it was alerted to them.  Further, given the unreasonableness of Panorama's positions and the need to deter such conduct, it is difficult to see how the imposition of attorney fees here could qualify as an abuse of discretion.[13]

## IV.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment in all respects.

---

[13] Panorama cites *Ronald Mayotte & Associates v. MGC Building Co.*, No. 97-1483, 1998 WL 385905 (6th Cir. July 1, 1998) (unpublished), claiming that "this court reversed an award of attorney fees for failure of the district court to properly consider" the *Fogerty* factors.  Appellant's Br. at 61.  Two problems with this argument are apparent.  First, *Ronald Mayotte* is an unpublished case, something that Panorama fails to acknowledge even in its citation.  More importantly, however, Panorama misstates the holding.  The *Ronald Mayotte* panel actually affirmed a refusal to award attorney fees, notwithstanding the district court's failure to discuss explicitly the *Fogerty* factors.