**LEADSINGER, INC., Plaintiff,**

v.

**BMG MUSIC PUBLISHING, etc., et al., Defendants.**

**No. CV 04–8099 VAP(PJWX).**

United States District Court, C.D. California.

Dec. 12, 2005.

Anthony H. Handal, Kirkpatrick Lockhart Nicholson Graham, New York, NY, Suzanne M. Henry, Kirkpatrick and Lockhart Nicholson Graham, Los Angeles, CA, for Plaintiff.

Adam F. Streisand, Joseph Geisman, Karen R. Thorland, Loeb & Loeb, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

PHILLIPS, District Judge.

The Court has received and considered all papers filed in support of, and in oppo-

sition to, Defendants' Motion to Dismiss. The Motion is appropriate for resolution without hearing. *See* Fed.R.Civ.P. 78; Local Rule 7–15. For the reasons set forth below, the Motion is GRANTED.

## I. BACKGROUND

Plaintiff Leadsinger, Inc. filed a Complaint ("Compl.") on September 28, 2004, requesting declaratory judgment that it is authorized to display the lyrics to songs, either in print or displayed on a video screen, under Section 115 of the Copyright Act, 17 U.S.C. § 115 or under the fair use doctrine, 17 U.S.C. § 107. [Compl. ¶ 3.]

### A. Plaintiff's Allegations

Plaintiff is a karaoke company and Defendant is a music publisher that owns or administers the copyrights to musical compositions. [*Id.* at ¶¶ 18–19.] Plaintiff's karaoke device ("device") is designed differently than other such devices. [*Id.* at ¶ 31.] Unlike "most karaoke record companies [that] put their recordings on cassettes, compact discs, or a compact disc + graphic or DVD format, which will display lyrics visually on a television screen when played in a karaoke machine connected to a television .... [Plaintiff] uses an all-in-one microphone player that has recorded songs imbedded on a microchip within the microphone-player [sic]." [*Id.* at ¶ 31.] The microphone player has a plug enabling it to be connected to a television set. [*Id.* at ¶ 32.] When connected, the music prerecorded on the microchip is played through the television, while the screen "displays the lyrics of the song on the television screen in real time as the song is played, so that the consumer can sing along with the lyrics." [1] [*Id.* at ¶ 32.] Additionally, licensed reproductions of still photographs sometimes appear as a back-

ground for the onscreen lyrics. [*Id.* ¶¶ 33 n. 4, 40.] Plaintiff's device sometimes includes printed copies of the lyrics for the songs recorded on the microchip. [*Id.* at ¶ 33.]

Plaintiff has obtained compulsory mechanical licenses, governed under Section 115 of the Copyright Act, 17 U.S.C. § 115, from Defendant BMG's licensing agent, The Harry Fox Agency. [Compl. ¶ 2.]

The use of the printed lyrics and the display of the lyrics on a television screen are intended as "either a tool to assist buyers in understanding the lyrics on the recorded music ... or as a means to assist parental controls over the lyrical content that children are exposed to." [*Id.* at ¶ 36, 38.]

### B. Proceedings

Defendants filed their Motion to Dismiss ("Mot.") on September 7, 2005. They argue that Plaintiff's Complaint fails to state a claim because "neither a compulsory license ... nor the fair use doctrine ... give licensees the right to synchronize copyrighted musical compositions ... with visual images and ... lyrics...." [Mot. at 2.] Plaintiff filed its Opposition ("Opp'n") on October 4, 2005. Defendants filed their Reply on October 18, 2005.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Dismissal is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *See Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir.2000);

---

1. When Plaintiff's device is used in this fashion, it and other karaoke devices work in the same manner. [Compl. ¶ 32.]

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir.1999).

The Court must view all allegations in the complaint in the light most favorable to the non-moving party and must accept all material allegations—as well as any reasonable inferences to be drawn from them—as true. See *Big Bear Lodging Ass'n*, 182 F.3d at 1101; *American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).

The scope of review under Rule 12(b)(6) is generally limited to the contents of the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.1994). Nevertheless, "a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1993), *overruled on other grounds by Galbraith v. Santa Clara*, 307 F.3d 1119, 1125–27 (9th Cir. 2002). The Court may also consider exhibits submitted with the complaint, *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.1988) (quotation marks omitted).

In order for a court to grant declaratory relief the actual controversy between the parties must relate to a claim upon which relief can be granted. *Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir.1982).

## III. DISCUSSION

Defendants correctly point out in their papers that this Motion revolves around one issue: Whether § 115 compulsory licenses or the fair use doctrine confer the right to synchronize musical compositions with visual images and to publish and display lyrics from compositions owned and controlled by others? [Mot. at 6, 12.]

## A. Compulsory Licenses

### 1. Plain Meaning

■ Defendants contend that the plain language of § 115 does not authorize Plaintiff to display visual images and lyrics that are synchronized with musical compositions. [Mot. at 6–7.] They argue that a § 115 license only permits Plaintiff to make and distribute phonorecords, and that Plaintiff's device is more than a mere phonorecord. [*Id.* at 7–8.] Further, Defendants cite to the only published authority on point, *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60 (2d Cir.1996), which held that a § 115 license does not authorize a karaoke company to publish or display a song's lyrics on a screen. [*Id.* at 8.] Further, it held that a karaoke device does not fall within the statutory definition of a phonorecord. [*Id.* at 9–10.]

Plaintiff argues that its device is within the broad definition of a phonorecord and is not an audiovisual work. [Opp'n at 7–9.] Further, it argues that lyrics are not literary works and no separate license is required to publish them. [Opp'n at 8.] Plaintiff contends that Defendants' reliance on the *ABKCO* decision is unfounded because the decision was improperly decided by the Second Circuit. [Opp'n at 10–11.]

Section 115 of the Copyright Act states:

In the case of nondramatic musical works, the exclusive rights provided by clauses (1) and (3) of section 106, to make and to distribute phonorecords of such works, are subject to compulsory licensing under the conditions specified by this section.

(a) Availability and Scope of Compulsory License.—

(1) When phonorecords of a nondramatic musical work have been distributed to the public in the United

States under the authority of the copyright owner, any other person, including those who make phonorecords or digital phonorecord deliveries, may, by complying with the provisions of this section, obtain a compulsory license to make and distribute phonorecords of the work. A person may obtain a compulsory license only if his or her primary purpose in making phonorecords is to distribute them to the public for private use . . . .

(2) A compulsory license includes the privilege of making a musical arrangement of the work to the extent necessary to conform it to the style or manner of interpretation of the performance involved, but the arrangement shall not change the basic melody or fundamental character of the work, and shall not be subject to protection as a derivative work under this title, except with the express consent of the copyright owner.

17 U.S.C. § 115.

A phonorecord is defined by the Copyright Act as:

Material objects in which sounds, other than those accompanying a motion picture or other audiovisual work, are fixed by any method now known or later developed, and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "phonorecords" includes the material object in which the sounds are first fixed.

17 U.S.C. § 101.

An audiovisual work is defined as:

Works that consist of a series of related images which are intrinsically intended to be shown by the use of machines, or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

17 U.S.C. § 101.

The plain meaning of § 115 does not permit Plaintiff to display visually images and lyrics in "real time" with music. A § 115 license specifically authorizes Plaintiff to make phonorecords and nothing more. Defendants aptly categorize Plaintiff's device as an audiovisual device, which is specifically excluded from the definition of a phonorecord. The display of the visual images and lyrics are meaningless with a karaoke device if they are not accompanied by music. Plaintiff admits in its Opposition that "there is no market for bare lyrics or for devices which cause the transitory display of lyrics of a song in sequential phrases." [Opp'n at 13.] The images and lyrics are intrinsically intended to be shown with the music from which they are taken; otherwise, there would be no context for the images or lyrics and no market for the product to be sold.

Moreover, according to the description of Plaintiff's device in its Complaint, there is no option to have the images and lyrics displayed on the television without accompanying music, unless the volume is manually lowered. As the visual images and lyrics are connected with the music, it is clear that Plaintiff's device is an audiovisual work.

Even if Plaintiff's device were not an audiovisual device, it would not fall within the definition of a phonorecord. The definition of phonorecord explicitly states that it is a "material object in which sounds" are fixed. Plaintiff's device, by its own admission, contains more than sounds. [Compl. ¶ 32.] The microchip contains visual images and lyrics that can be displayed, in addition to the music. Defendant correctly argues that the definition of

phonorecords does not include "sounds *and visual representations of song lyrics*" or any other language to that effect. [Reply at 5.] The definition explicitly limits a phonorecord to an object which fixes sounds, and Plaintiff's device contains sounds, and visual images and lyrics. Thus, Plaintiff's device is not within the statutory definition of a phonorecord.[2]

Plaintiff's arguments that the device is not an audiovisual device because the visual images and lyrics are "tools to communicate the sounds of the sung lyrics" and are "intrinsically intended to be sung" are in error. [Opp'n at 7–8.] The argument that Plaintiff's device is a tool to communicate the song lyrics does not oppose, but rather supports, the reasoning of the Court. If the visual images and the lyrics are tools to help communicate the song lyrics, then the only way for the tools to be effective would be to display them accompanied by the music they are purportedly explaining or illustrating. Since the effectiveness of the tools depend on their accompaniment with music, they are intrinsically intended to be accompanied by such music.

Plaintiff's other argument, that the visual lyrics are intrinsically intended to be sung, also fails. That the lyrics were intrinsically intended to be sung does not preclude the argument that the lyrics are also intrinsically intended to be accompanied by sound.

### 2. Case–Law Authority

In addition to the plain language argument, Defendant cites the only authority that addresses this issue, *ABKCO,* a Second Circuit case. [Mot. at 8.]

The *ABKCO* court held that CD + G's are not phonorecords according to the plain meaning of § 101. 96 F.3d at 64–66. The *ABKCO* court stated:

The plain language of the Copyright Act refutes Tracks' view. Phonorecords are defined as objects on which "sounds" are fixed; CD + G's, however, are objects on which sounds and visual representations of song lyrics are fixed. Moreover, the term phonorecord expressly excludes "audiovisual works," yet CD + G's constitute "audiovisual works," since they "consist of a series of related images"— the lyrics—"together with accompanying sounds"—the music.

*Id.* at 65.

Although *ABKCO* is authority from another circuit, the Court finds the reasoning convincing and consistent with its own independent analysis of the plain meaning of §§ 101 and 115 of the Copyright Act.

Plaintiff urges the Court that the *ABKCO* decision is unsound because (1) "it failed to consider whether the images are intrinsically intended to be shown with sound, and (2) perhaps dispositively, the decision did not address the issue of fair use." [Opp'n at 10.]

First, the mere fact that the words "intrinsically intended" were not in the sentence, "CD + G's constitute 'audiovisual works,' since they 'consist of a series of related images'—the lyrics-'together with accompanying sounds'—the music," does not mean that it was not considered by the court or would have affected the opinion. Second, that the *ABKCO* Court did not consider whether the images are intrinsically intended to be shown with sounds does not affect the decision's soundness. Third, the court found that CD + G's did not fall within the statutory definition of phonorecord, which does not require a consideration of whether the lyrics are intrinsically intended to be accompanied by sounds. Thus, even if the court did not

---

**2.** In light of the Court's ruling, the Court need not address Defendants' argument that literary works are independently protected under the Copyright Act. [Mot. at 8.]

adequately address whether the lyrics are intrinsically intended to accompany music, it appears to be a non-material omission.

The court's failure to discuss the fair use doctrine is irrelevant. Although the fair use allegation is present in this case as an alternate theory, this has no bearing on the *ABKCO* court's analysis of whether a § 115 license authorizes a karaoke company to display the lyrics to recorded songs.

### B. Fair Use Doctrine

■ Defendants argue that (1) the reproduction of unchanged song lyrics does not constitute criticism, comment, news, teaching, scholarship, or research and (2) the four factors listed in 17 U.S.C. § 107 each confirm that Plaintiff's reproduction of the song lyrics is not within the fair use doctrine. [Mot. at 13.]

Plaintiff argues that a fair use claim is a mixed question of law and fact that cannot be addressed on a motion to dismiss. [Opp'n at 11.] Further, Plaintiff argues that the reproduction of the song lyrics is a teaching tool and is a product of universal concern, such as allowing parents to regulate the song lyrics that their children listen to. [Opp'n at 12.] Plaintiff also argues that the display of the lyrics does not change the nature of the noninfringing karaoke performance and is merely a tool for allowing enjoyment of licensed recording. [Opp'n at 13.]

■ The Court notes the unique procedural framework of this case. The fair use doctrine, normally used as an affirmative defense, is being used as a ground for the Court to grant declaratory relief. In other words, the fair use doctrine is being used as a sword rather than a shield. The Court, however, finds no reason to treat a fair use claim any differently than any other claim for the purposes of a motion to dismiss. While Plaintiff is correct that a fair use analysis is a mixed question of law and fact, *See, e.g., Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 560, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), Plaintiff presents no authority for why a fair use claim would be excluded from being considered in a motion to dismiss. Moreover, a court may appropriately decide a fair use defense on a summary judgment motion when the material facts are not in dispute. *Mattel, Inc. v. Walking Mountain Productions,* 353 F.3d 792, 800 (9th Cir.2003). In a motion to dismiss, material facts are not in dispute because all factual allegations in Plaintiff's Complaint are considered true.

Thus, if Plaintiff's Complaint fails to allege facts that, if proven, would entitle it to relief, Defendants' Motion should be granted.

A person's fair use of a copyrighted work, such as for criticism, comment, news reporting, teaching, scholarship, or research, do not infringe on another persons copyright. 17 U.S.C. § 107. In determining if a person's use is fair, a court shall consider:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

■ Concerning the general use of Plaintiff's device, the Complaint does not allege specifically, or allege any facts upon which the Court can make a reasonable inference, which supports that Plaintiff uses the device for teaching. Plaintiff's contention that its karaoke device is a teaching tool for the customer or that it

assists parents in regulating the music to which their children listen is immaterial because a fair use analysis focuses on the use of the infringing party, not on the consumer. *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 797 (9th Cir.1992).

Analyzing the specific factors laid out in § 107, Plaintiff's Complaint fails to allege specifically, or allege facts upon which the Court can make a reasonable inference, upon which relief can be granted.

The only factual allegations made in Plaintiff's Complaint concerning the first element, the purpose and character of use, establish that the purpose behind Plaintiff's device is so that Plaintiff can market and sell the device and receive revenue. [Compl. ¶ 17, 18.] As discussed above, the customer's use of the product is irrelevant.

There are several facts concerning the second factor, the nature of the copyrighted work, in Plaintiff's Complaint. The facts, however, do not support Plaintiff's claim. The copyrighted works are lyrics and music created by various musicians, which are creative in nature and at the core of copyright's protective purpose. *See, e.g., Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 586, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994).

The facts alleged in Plaintiff's Complaint do not support a favorable finding under the third factor, the amount of copyrighted work reproduced, either. Plaintiff alleges that it displays the lyrics in their entirety. [Compl. ¶ 32–33.] Although copying a protected work in its entirety does not mean that it cannot be fair use, per se; it militates against a finding of fair use. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1155 (9th Cir.1986).

There are no allegations in Plaintiff's Complaint that permit the Court to analyze the fourth factor, the likely effect the sale of Plaintiff's device will have on the market.

Taking all of Plaintiff's allegations as true, the Court finds that there is no support for a finding that Plaintiff's device is protected from liability under the fair use doctrine.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is dismissed without leave to amend because any amendment would be futile.