**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LEADSINGER, INC.,
            *Plaintiff-Appellant,*

v.

BMG MUSIC PUBLISHING, a division
of Bertelsmann, e/s/a BMG Songs,
Inc., e/s/a Careers-BMG Music
Publishing, Inc.; BMG SONGS,
INC.; CAREERS-BMG PUBLISHING,
INC.; ZOMBA ENTERPRISES, INC.,
e/s/a Zomba Songs, Inc.; ZOMBA
SONGS, INC.,
            *Defendants-Appellees.*

No. 06-55102

D.C. No.
CV-04-08099-VAP

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
October 18, 2007—Pasadena, California

Filed January 2, 2008

Before: Diarmuid F. O'Scannlain and Milan D. Smith, Jr.,
Circuit Judges, and Michael W. Mosman,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Michael W. Mosman, United States District Judge for the District of Oregon, sitting by designation.

**COUNSEL**

Anthony H. Handal, Brown Rudnick Berlack Israels LLP, New York, New York, for the plaintiff-appellant.

Karen R. Thorland, Loeb & Loeb LLP, Los Angeles, California, for the defendants-appellees.

**OPINION**

MILAN D. SMITH, JR., Circuit Judge:

This case requires us to determine how the Copyright Act, 17 U.S.C. §§ 101-1332, applies to karaoke devices that enable individuals to sing along to recordings of musical compositions, which is a matter of first impression in this circuit. In the district court, Plaintiff-Appellant Leadsinger, Inc., a karaoke device manufacturer, filed a complaint for declaratory judgment against music publishers, Defendants-Appellees BMG Music Publishing and Zomba Enterprises, Inc. ("BMG"). Leadsinger sought a declaration that it is entitled to print or display song lyrics in real time with song recordings as long as it obtains a compulsory mechanical license under 17 U.S.C. § 115, or that it is entitled to do so under the fair use doctrine, 17 U.S.C. § 107. The district court dismissed the complaint without leave to amend for failure to state a claim. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Karaoke devices necessarily involve copyrighted works because both musical compositions and their accompanying song lyrics are essential to their operation. BMG owns or administers copyrights in musical compositions and through its licensing agent, the Harry Fox Agency, has issued to Leadsinger compulsory mechanical licenses to copyrighted musical compositions under § 115 of the Copyright Act. In addition to the mechanical fee required to secure a compulsory license, BMG has demanded that Leadsinger and other karaoke companies pay a "lyric reprint" fee and a "synchronization fee." Leadsinger has refused to pay these additional fees and filed for declaratory judgment to resolve whether it has the right to visually display song lyrics in real time with song recordings, as well as print song lyrics, without holding anything more than the § 115 compulsory licenses it already possesses.

In its complaint, Leadsinger describes the karaoke device it manufactures as "an all-in-one microphone player" that has recorded songs imbedded in a microchip in the microphone. When the microphone is plugged into a television, the lyrics of the song appear on the television screen in real time as the song is playing, enabling the consumer to sing along with the lyrics. Though most karaoke companies put their recordings on cassettes, compact discs, or use a compact disc + graphic ("CD+G") or DVD format, these other karaoke devices, much like Leadsinger's, display lyrics visually when played in a device that is connected to a television.

Leadsinger's device sometimes displays licensed reproductions of still photographs as a background for the onscreen lyrics. And, on occasion, Leadsinger includes with the device a printed copy of the lyrics to the songs recorded on the microchip. According to Leadsinger's complaint, the purpose of both the printed and visually displayed song lyrics is to "facilitate the customer's ability to read the lyrics and/or sing

along with the recorded music." Leadsinger further claims that both in and outside the karaoke context, the inclusion of printed lyrics assists buyers in understanding song lyrics and enables parents to control "the lyrical content that children are exposed to."

The district court concluded that a § 115 compulsory license does not grant Leadsinger the right to display visual images and lyrics in real time with music, and that the allegations in Leadsinger's complaint do not support its fair use claim. *Leadsinger, Inc. v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1193-97 (C.D. Cal. 2005). The district court dismissed Leadsinger's complaint without leave to amend, concluding that amendment would be futile. *Id.* at 1197. This appeal followed.

## II. STANDARD OF REVIEW AND JURISDICTION

We review a district court's grant of a motion to dismiss de novo. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883 (9th Cir. 2005) (citation omitted). Dismissal for failure to state a claim is proper only "if it appears beyond doubt" that the non-moving party "can prove no set of facts which would entitle him to relief." *Vazquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007) (internal quotations and citation omitted). In making this determination, we accept all allegations of fact as true and construe the complaint in the light most favorable to the non-moving party. *Id.* We have jurisdiction under 28 U.S.C. § 1291.

## III. DISCUSSION

### A. The Copyright Act

**[1]** In deciding whether the district court properly dismissed Leadsinger's complaint, we are guided by the language of the Copyright Act. Section 102 of the Copyright Act extends copyright protection to, among other original works

of authorship, literary works, musical works (including any accompanying words), and sound recordings. 17 U.S.C. § 102. Though 17 U.S.C. § 106 grants copyright owners the exclusive right to reproduce copyrighted works "in copies or phonorecords" and to "distribute copies or phonorecords of the copyrighted work to the public by sale," 17 U.S.C. § 115 limits copyright owners' exclusive rights with respect to phonorecords.

**[2]** Phonorecords are defined as:

> [M]aterial objects in which sounds, *other than those accompanying a motion picture or other audiovisual work*, are fixed by any method now known or later developed, and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "phonorecords" includes the material object in which the sounds are first fixed.

17 U.S.C. § 101 (emphasis added). Section 115 subjects phonorecords to a compulsory licensing scheme that authorizes any person who complies with its provisions to obtain a license to make and distribute phonorecords of a nondramatic musical work if: (1) the work has "been distributed to the public in the United States under the authority of the copyright owner"; and (2) the person's "primary purpose in making phonorecords is to distribute them to the public for private use." *Id.* § 115(a)(1). As the definition of phonorecords indicates, audiovisual works are not phonorecords. *See id.* § 101. Thus, § 115's compulsory licensing scheme does not apply to audiovisual works.

**[3]** The Copyright Act defines audiovisual works as:

> [W]orks that consist of a series of related images which are intrinsically intended to be shown by the use of machines, or devices such as projectors, view-

ers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

*Id.*; *see* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.09[A] (2007) [hereinafter *Nimmer on Copyright*]. Though it is not explicit in the Copyright Act, courts have recognized a copyright holder's right to control the synchronization of musical compositions with the content of audiovisual works and have required parties to obtain synchronization licenses from copyright holders. *See Maljack Prods., Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 884-85 (9th Cir. 1996) (recognizing the concept of synchronization rights); *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 63 n.4 (2d Cir. 1996) ("A synchronization license is required if a copyrighted musical composition is to be used in 'timed-relation' or synchronization with an audiovisual work.") (citation omitted); *see also* 6 *Nimmer on Copyright* § 30.02[F][3] ("A license is necessary if an existing musical composition is to be used in synchronization or 'timed-relation' with an audiovisual work.").

**[4]** The Copyright Act defines literary works as "works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.S.C. § 101. Song lyrics are copyrightable as a literary work and, therefore, enjoy separate protection under the Copyright Act. *See id.* § 102(a)(1) (extending copyright protection to "literary works"); *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 578 n.1 (6th Cir. 2007); *ABKCO Music*, 96 F.3d at 64; 1 *Nimmer on Copyright* § 2.05[B] (lyrics "alone are nevertheless copyrightable as a literary work").

### B.   Karaoke Devices As "Audiovisual Works"

The district court concluded that Leadsinger would not be entitled, under any set of facts, to a declaration that a § 115 compulsory license to make and distribute phonorecords authorizes it to display song lyrics in real time with song recordings. While our reasoning differs slightly from that of the district court, we agree with the district court's conclusion.

The district court reasoned that Leadsinger's device falls outside of the definition of phonorecord because the device contains more than sounds. *Leadsinger, Inc. v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1194-95 (C.D. Cal. 2005); *see* 17 U.S.C. § 101 ("Phonorecords are material objects in which sounds, other than those accompanying a motion picture or other audiovisual work, are fixed . . . ."). While it is true that the microchip in Leadsinger's device stores visual images and visual representations of lyrics in addition to sounds, the plain language of the Copyright Act does not expressly preclude a finding that devices on which sounds *and* visual images are fixed fall within the definition of phonorecords. 17 U.S.C. § 101. The definition of phonorecords is explicit, however, that audiovisual works are not phonorecords and are excluded from § 115's compulsory licensing scheme. *Id.* § 101. We need not settle upon a precise interpretation of § 101's definition of phonorecords in this case because Leadsinger's karaoke device meets each element of the statutory definition of audiovisual works and, therefore, cannot be a phonorecord.

**[5]** As stated above, § 101 of the Copyright Act defines audiovisual works as works consisting of "a series of related images" that are "intrinsically intended to be shown by the use of machines . . . ." First, the visual representation of successive portions of song lyrics that Leadsinger's device projects onto a television screen constitutes "a series of related images."[1] Though Leadsinger suggests that its images of song

---

[1]When discussing the images that Leadsinger's karaoke device projects, we refer only to the visual representation of song lyrics. While Lead-

lyrics are not related, the images bear a significant relation-ship when examined in context. In its complaint, Leadsinger explained that the purpose of karaoke is for the consumer to sing the lyrics to a song "in real time" as the song is playing. To accomplish this purpose, it is necessary that the images of song lyrics be "presented sequentially" so as to match the accompanying music and make the lyrics readable. *See* 1 *Nimmer on Copyright* § 2.09[B] ("[A] series of slides . . . if presented sequentially (or in a 'related sequence') will consti-tute an audiovisual work . . . .").

The fact that the related images are comprised of song lyr-ics, which constitute a literary work, does not preclude us from concluding that Leadsinger's device is an audiovisual work. The definition of literary works is clear that the catego-ries of literary works and audiovisual works are not mutually exclusive. The Copyright Act defines literary works as "works, *other than audiovisual works*, expressed in words . . . regardless of the nature of the material objects, such as . . . phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.S.C. § 101. That the definition of literary works includes the phrase "other than audiovisual works," confirms that a literary work may constitute an audiovisual work if it also fulfills the definition of an audiovisual work.

Second, though § 101 does not require that an audiovisual work have sound, in the case of Leadsinger's karaoke device, its images of successive portions of song lyrics are "intrinsi-cally intended to be shown by the use of machine . . . together with accompanying sounds." *Id.* § 101. An essential function of Leadsinger's device is its ability to indicate to the con-sumer exactly when to sing each lyric. Leadsinger's device is

singer's complaint states that its device sometimes includes licensed reproductions of still photographs as a background for the onscreen lyrics, nothing in the complaint indicates that these still photographs could be characterized as a "series of related images."

able to do so only because it utilizes a machine to project the song lyrics "in real time" with the accompanying music.

In *ABKCO Music*, the Second Circuit similarly concluded that the karaoke device in that case was an audiovisual work. 96 F.3d at 65. Though the *ABKCO Music* court failed to discuss the importance of a machine to the functioning of the karaoke device at issue, it held that the device constituted an audiovisual work, "since [it] 'consist[s] of a series of related images'—the lyrics—'together with accompanying sounds'—the music." *Id.* (quoting 17 U.S.C. § 101).[2]

To the extent it is requested, Leadsinger also is not entitled to a declaration that compulsory mechanical licenses under § 115 allow it to reprint lyrics in booklets that accompany its karaoke products. As stated above, lyrics are separately copyrightable as literary works. *See Zomba Enters.*, 491 F.3d at 578 n.1; *ABKCO Music*, 96 F.3d at 64. Section 115 covers only the right to "make and distribute phonorecords." Though these phonorecords may include oral renditions of song lyrics, the reproduction of song lyrics on paper is not within the

---

[2]The only court to hold that a karaoke device is not an audiovisual work is the District Court for the District of Utah, in *EMI Entm't World, Inc. v. Priddis Music, Inc.*, 505 F. Supp. 2d 1217, 1221-22 (D. Utah 2007), which concluded that synchronization licenses are not necessary to sell a product that displays lyrics in timed relation with music. In essence, the *EMI Entertainment World* court did not view the use of song lyrics for karaoke as different from the production of printed copies of song lyrics. *Id.* We are not persuaded by the court's reasoning in *EMI Entertainment World*. That case failed to consider the use of song lyrics in context. *See WGN Cont'l Broad. Co. v. United Video, Inc.*, 693 F.2d 622, 628 (7th Cir. 1982) (holding that printed text is part of an audiovisual work when overlaid on a broadcast news program). The images of song lyrics for the purpose of karaoke differ from song lyrics printed on a sheet of paper. Song lyrics printed on paper are not a series of images, have no relationship to a machine, and are not capable of indicating to the consumer when the lyrics are to be sung. On the other hand, images of song lyrics embedded in a karaoke device are part of a series of images, and must be shown by a machine so that the consumer knows when to sing each lyric.

scope of § 115. *See ABKCO Music, Inc.*, 96 F.3d at 64; *cf. EMI Entm't World*, 505 F. Supp. 2d at 1223 (noting that the defendants had "reprint licenses" entitling them to reprint lyrics of copyrighted songs).

**[6]** We hold that Leadsinger's device falls within the definition of an audiovisual work. As a result, in addition to any § 115 compulsory licenses necessary to make and distribute phonorecords and reprint licenses necessary to reprint song lyrics, Leadsinger is also required to secure synchronization licenses to display images of song lyrics in timed relation with recorded music.

## C. Fair Use

Leadsinger argues that regardless of whether its device is subject to § 115's compulsory licensing scheme, it is entitled to publish or display copyrighted song lyrics under the fair use doctrine. We agree with the district court's conclusion that the allegations in Leadsinger's complaint do not support a finding of fair use.

**[7]** The Copyright Act does not grant a copyright holder exclusive rights to reproduce his or her work. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432-33 (1984). Section 107 of the Copyright Act explains that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. In determining whether the use of a copyrighted work is fair, we consider:

> (1)   the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2)   the nature of the copyrighted work;

(3)   the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)   the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* When conducting a fair use analysis, we are not restricted to these factors; rather, the analysis is a flexible one that we perform on a case-by-case basis. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)). Moreover, we do not consider these factors in isolation but weigh them together, in light of the copyright law's purpose "to promote the progress of science and art by protecting artistic and scientific works while encouraging the development and evolution of new works." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799-800 (9th Cir. 2003) (citing *Campbell*, 510 U.S. at 575-76).

Fair use is a mixed question of law and fact, *Harper & Row Publishers*, 471 U.S. at 560, but it is well established that a court can resolve the issue of fair use on a motion for summary judgment when no material facts are in dispute. *See Mattel*, 353 F.3d at 800 (citing *Harper & Row Publishers*, 471 U.S. at 560). The posture of this case is unusual because the district court decided the fair use issue on a motion to dismiss. However, the district court's resolution of the fair use issue at the motion to dismiss stage was proper. Leadsinger's assertion of fair use may be considered on a motion to dismiss, which requires the court to consider all allegations to be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment, when no material facts are in dispute. We hold that Leadsinger's allegations, when taken as true, do not support a finding of fair use.

As a preliminary matter, Leadsinger does not allege that its display or printing of BMG's copyrighted song lyrics are for

the purpose of "criticism, comment, news reporting, teaching . . . , scholarship, or research . . . ." *See* 17 U.S.C. § 107. While Leadsinger argued on appeal that karaoke teaches singing, that allegation is not set forth in its complaint. Even if the court could infer that a karaoke device has the potential to teach singing because the device allows consumers to sing along with recorded music, it is not reasonable to infer that teaching is actually the purpose of Leadsinger's use of the copyrighted lyrics.

**[8]** With regard to the first factor under § 107, Leadsinger's allegations support only a commercial use. The complaint does not allege that Leadsinger's use of copyrighted lyrics is transformative. *See Mattel*, 353 F.3d at 800 (explaining that an analysis of "the purpose and character of use" asks to what extent the new work transforms, rather than simply supplants, the original work, and stating that "a work must add 'something new, with a further purpose or different character, altering the first with new expression, meaning, or message' " (quoting *Campbell*, 510 U.S. at 579)). It is reasonable to infer that Leadsinger does not add to or alter the copyrighted lyrics, which would undermine the device's ability to enable consumers to sing along with the recorded music.

**[9]** Though Leadsinger alleges that its use of lyrics helps consumers to understand the song lyrics and that "the words facilitate parental control over objectionable song words," "the ultimate use to which the customer puts [a copyrighted work] is irrelevant . . . ." *L.A. News Serv. v. Tullo*, 973 F.2d 791, 797 (9th Cir. 1992); *see Harper & Row Publishers*, 471 U.S. at 562 ("The crux of the profit/non-profit distinction is . . . whether the [vendor] stands to profit from exploitation of the copyrighted material without paying the customary price."); *Zomba Enters.*, 491 F.3d at 582-83 ("[T]he end-user's utilization of the product is largely irrelevant . . . ."). Leadsinger's basic purpose remains a commercial one—to sell its karaoke device for profit. And commercial use of copyrighted material is "presumptively an unfair exploitation

of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of Am.*, 464 U.S. at 451.

The only other circuit court to address fair use in the context of karaoke reached the same conclusion. In *Zomba Enterprises*, the defendant, a karaoke company, argued that its use of copyrighted musical compositions was fair. 491 F.3d at 581. The Sixth Circuit held that the defendant's use of copyrighted musical compositions did not constitute "fair use." *Id.* at 584. In assessing the first § 107 factor, "the purpose and character of the use of the work at issue," the Sixth Circuit characterized the defendant's use as "commercial" and rejected the argument that karaoke is a teaching tool. *Id.* at 582-83.

**[10]** The second factor under § 107, "the nature of the copyrighted work," also weighs in BMG's favor. Original song lyrics are a work of creative expression, as opposed to an informational work, which is precisely the sort of expression that the copyright law aims to protect. *See Abend v. MCA, Inc.*, 863 F.2d 1465, 1481 (9th Cir. 1988) (fictional short story is "a quintessentially creative product"); *see also Campbell*, 510 U.S. at 586 (concluding that musical composition "Oh, Pretty Woman" fell "within the core of the copyright's protective purposes"); 4 *Nimmer on Copyright* § 13.05[A][2][a] ("[T]he more creative a work, the more protection it should be accorded from copying; correlatively, the more informational or functional the plaintiff's work, the broader should be the scope of the fair use defense.")

The third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," also militates against a finding of fair use. *See Worldwide Church of God v. Phila. Church of God*, 227 F.3d 1110, 1118 (9th Cir. 2000) (copying an entire work "militates against a finding of fair use" (quoting *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1155 (9th Cir. 1986)). Leadsinger alleges that it has the right to print or display the song lyrics

to the songs it records, and nothing in the complaint indicates that Leadsinger uses only a portion of the copyrighted lyrics. It is, therefore, reasonable to assume that Leadsinger uses copyrighted lyrics in their entirety.

**[11]** On appeal, Leadsinger devotes much of its attention to the fourth factor under § 107, "the effect of use upon the potential market for or value of the copyrighted work." The district court concluded that the allegations in Leadsinger's complaint did not permit it to analyze the effect that the sale of Leadsinger's device would have on the market. We reach the same conclusion.

In arguing that its use will not affect the potential market, Leadsinger contends that there is no market for song lyrics standing alone. Leadsinger failed to allege this in its complaint and we are not willing to assume that there is no such market. Leadsinger did allege that music publishers "have never (or rarely) required a print license" for the use of lyrics by record companies. But, Leadsinger's complaint specifies that this practice is for non-karaoke recordings and that music publishers have demanded "lyric reprint" fees for karaoke use. We do not find it reasonable to infer that because copyright holders allow record companies to reprint lyrics in conjunction with non-karaoke recordings, no harm will result from the reprinting and display of song lyrics in the distinctly different context of karaoke. Thus, as the district court observed, Leadsinger has failed to set forth allegations on the effect of its device on the potential market for or value of the copyrighted work.

**[12]** We have, however, concluded that Leadsinger's use is intended for commercial gain, and it is well accepted that when "the intended use is for commercial gain," the likelihood of market harm "may be presumed." *Sony*, 464 U.S. at 451. We have not hesitated to apply this presumption in the past, *see, e.g.*, *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 631 (9th Cir. 2003), and we are not reluctant

to apply it here. Moreover, "the importance of [the market effect] factor [varies], not only with the amount of harm, but also with the relative strength of the showing on the other factors." *See Campbell*, 510 U.S. at 591 n.21. The showing on all other factors under § 107 is strong: the purpose and character of Leadsinger's use is commercial; song lyrics fall within the core of copyright protection; and Leadsinger uses song lyrics in their entirety. On this basis, we affirm the district court's dismissal of Leadsinger's request for a declaration based on the fair use doctrine.

## D.   Denial of Leave to Amend

We review a denial of leave to amend for abuse of discretion. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002). The Federal Rules of Civil Procedure state that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). An outright refusal to grant leave to amend without a justifying reason is, however, an abuse of discretion. *Id.*

In this case, the district court specified that its dismissal of Leadsinger's complaint was without leave to amend "because any amendment would be futile." We have previously accepted this as a basis upon which a district court may deny leave to amend. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (citation omitted) (stating that the court need not extend the general rule that parties are allowed to amend their pleadings if amendment "would be an exercise in futility"). And we will affirm the district court's dismissal on this basis if "it is clear, upon *de novo* review, that the com-

plaint could not be saved by any amendment." *See Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). Based on our de novo review above, the district court's conclusion that Leadsinger's complaint could not be saved by any amendment was not an abuse of discretion.

No amendment would change the conclusion that Leadsinger's karaoke device falls within the definition of an audiovisual work and outside the scope of § 115's compulsory licensing scheme. Indeed, the conclusion that Leadsinger's device displays a series of related images that are intrinsically intended to be shown by a machine together with accompanying sounds is justified by Leadsinger's own description of how its all-in-one microphone allows a consumer to sing lyrics "in real time" with recorded music.

Any amendment relating to Leadsinger's purported fair use also would have been futile. Leadsinger's allegations support that its use of copyrighted song lyrics is commercial, that song lyrics fall within the core of copyright protection, and we have drawn the reasonable inference that Leadsinger uses song lyrics in their entirety. Thus, the only possible amendment relating to fair use would address the harm to the potential market for or value of the copyrighted work. That amendments relating to the fourth § 107 factor are a possibility is not enough to find that the district court abused its discretion given that the first three factors under § 107 unequivocally militate against a finding of fair use, and we are not to consider these factors in isolation. *See Campbell*, 510 U.S. at 591 n.21.

Moreover, Leadsinger's action was one for declaratory judgment. Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay

or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close."); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) ("The [Declaratory Judgment] Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.' " (quoting *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). On this basis alone, the district court was within its discretion to dismiss Leadsinger's complaint without leave to amend.

## *CONCLUSION*

For the foregoing reasons, we AFFIRM the district court's dismissal of Leadsinger's complaint without leave to amend.